UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| MARCIA SMITHEY, as Personal Representative of the Estate of Edward Smithey,<br><br>Plaintiff,<br><br>vs.<br><br>STUEVE CONSTRUCTION CO., and LITTLE WALLS, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. 04-4067-KES<br><br>ORDER DENYING SUMMARY JUDGMENT |

Plaintiff, Marcia Smithey, as personal representative of the Estate of Edward Smithey, asserts a negligence action against Stueve Construction Co. and Little Walls, LLC (collectively referred to as defendants). Little Walls moves for summary judgment. Stueve joins the motion. For the reasons discussed below, the motions are denied.

**FACTUAL BACKGROUND**

Stueve is a contractor specializing in the construction of fertilizer plants. Stueve contracted with Cenex Harvest States (CHS) to construct a fertilizer plant near Worthing, South Dakota (referred to herein as the Worthing Project). To enable the distribution of fertilizer, the design of the Worthing Project called for creation of an underground, concrete tunnel. The tunnel was designed to be 10 feet wide, 12 feet deep, and approximately 100 feet long. The tunnel would house train tracks and rail cars, and equipment

would transport fertilizer from the factory to the rail cars for distribution. From an observer at ground level, the top of the tunnel looks like a solid concrete pad.  The concrete pad contained several openings, however, to facilitate access to the equipment that would transport the fertilizer from the factory to the rail cars.  Metal grates or lids would be placed over these openings.

Construction on the Worthing Project began in August of 2003.  Stueve subcontracted the concrete work on the Worthing Project to Little Walls.  As part of its work, Little Walls poured the concrete tunnel.  Little Walls did not, however, install the rail lines or any of the distribution equipment that would be housed in the concrete tunnel.  Nor did Little Walls install the metal grates over the openings.  Instead, a third company was in charge of installing both the distribution equipment and the metal grates.

Edward Smithey was the general manager of Dakota Plains Ag Center (Dakota Plains).  Dakota Plains owns a fertilizer plant in Tripp, South Dakota. Stueve originally built Dakota Plains's facility.  While Stueve was working on the Worthing Project, Dakota Plains began to consider adding an addition to its facility.  As a result, Smithey contacted David MacDonald, one of Stueve's sales managers.  Smithey indicated that he would like to view the Worthing Project.

In response, MacDonald invited Smithey to come see the Worthing Project. There is a factual dispute regarding the scope of that invitation, however. Smithey presents evidence indicating that MacDonald told him to "come by anytime." (Docket 52-3). Defendants claim that MacDonald told Smithey that he was welcome to come see the Worthing Project, but that he needed to make an appointment for a tour. (Docket 47-8, 3-4).

It is undisputed that on November 18, 2003, Smithey was in Sioux Falls, South Dakota, to attend a meeting of the Dakota Plains's board of directors. David Finck, a board member of Dakota Plains, rode with Smithey to Sioux Falls. Following a full day of meetings, the board members and Smithey went to dinner. Smithey had one beer. After dinner, Smithey and Finck left Sioux Falls to return home. Smithey was driving. He told Finck that he wanted to stop and look at the Worthing Project, which was on their way home.

Around 9:30 p.m., Smithey and Finck arrived at the Worthing Project. It was dark and there were no workers present. Smithey drove onto the project. He stopped his vehicle near the concrete tunnel. Smithey then got out of his vehicle and walked on the concrete pad that was the top of the tunnel. Finck originally got out of the vehicle as well but decided to get back in the vehicle. The only light was that provided by the headlights of Smithey's vehicle. Finck testified that Smithey was walking in the light from the

headlights when Finck saw him fall. Finck went to see if Smithey was hurt, but it was too dark. Finck was only able to conclude that Smithey fell in a hole by sticking his hand into the hole. Finck then moved the vehicle closer so that it provided more light.

Smithey fell into one of the openings in the top of the concrete tunnel. He ultimately died from his injuries. There is a factual dispute about whether there were barricades around the opening into which Smithey fell. There is no dispute, however, that Little Walls was finished with its concrete work on the tunnel by the time the accident occurred. Metal grates were supposed to be installed by a third party, but had not yet been installed over the openings.

**STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is not appropriate if a dispute about a

material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980). The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that a genuine issue exists. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

**DISCUSSION**

Smithey asserts a negligence action against defendants. Smithey argues that defendants were negligent in failing to properly barricade, failing to provide adequate lighting to prevent Smithey from falling in the hole on the construction site, and failing to properly inspect the Worthing Project site for safety. Defendants move for summary judgment based on two alternative arguments. First, defendants argue that they did not breach their standard of care toward Smithey as a matter of law. Second, defendants argue that

Smithey's assumption of the risk and contributory negligence bar recovery as a matter of law.

## I. Duty and Standard of Care

Defendants argue they are entitled to summary judgment because no reasonable jury could find that they had breached their standard of care toward Smithey. According to South Dakota law,[1] the plaintiff in a negligence action has the burden of proving three essential elements: (1) that defendant owed a duty to the plaintiff; (2) that the defendant breached that duty; and (3) that the plaintiff's injury was caused by the breach of the duty. See Bordeaux v. Shannon County Sch., 707 N.W.2d 123, 127 (S.D. 2005). "Before liability may be imposed on the theory of negligence there must be a duty on the part of the defendant to protect a plaintiff from injury." Kuehl v. Horner (J.W.) Lumber Co., 678 N.W.2d 809, 812 (S.D. 2004). "Duty may be imposed by common law or by statute." Poelstra v. Basin Elec. Power Coop., 545 N.W.2d 823, 826 (S.D. 1996).

Defendants argue that the legal rules of premises liability determine their duty. Smithey argues that defendants' contractual obligations to implement safety measures creates a duty to act reasonably. The court will discuss each theory in turn.

---

[1] South Dakota substantive law governs this diversity action. See Smith v. Tenet Healthsystem SL, Inc., 436 F.3d 879, 886 (8th Cir. 2006).

**A. Premises Liability**

Defendants argue that the premises liability rules apply, and thus, their duty toward Smithey is determined by his status. Defendants also argue that no reasonable jury could find that they breached their duty toward Smithey because he was either a licensee or a trespasser. Smithey disputes whether defendants' duty is governed by premises liability rules. Smithey also argues that even if premises liability rules apply, a reasonable jury could find that he was an invitee, and that defendants breached their standard of care.

As a general rule, South Dakota follows the traditional common law and varies the landowner's duty depending on whether the plaintiff is an invitee, licensee, or trespasser. See Musch v. H-D Elec. Coop., 460 N.W.2d 149, 151 (S.D. 1990). "These categories make out a sliding standard, where, as the legal status of the visitors improves, the landowner owes him or her a higher standard of care." Id.

The highest standard of care applies when the plaintiff is an invitee or a business visitor. South Dakota has explicitly adopted the Restatement (Second) of Torts § 343 "as providing the applicable guidelines for the duty owed by a possessor of land to a business invitee." Jones v. Kartar Plaza Ltd., 488 N.W.2d 428, 430 (S.D. 1992). "As a general rule, 'the possessor of land owes an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety and is liable for the breach of such duty.' "

Rowland v. Log Cabin, Inc., 658 N.W.2d 76, 79 (S.D. 2003) (quoting Norris v. Chicago, M. St. P. & P. R. Co., 51 N.W.2d 792, 793 (S.D. 1952)). "The duty requires the landowner to keep the property reasonably safe." See Luke v. Deal, 692 N.W.2d 165, 169 (S.D. 2005). The possessor's duty to invitees or business visitors includes a duty to "warn of concealed, dangerous conditions known to the landowner[.]" Luther v. City of Winner, 674 N.W.2d 339, 347 (S.D. 2004) (quoting Restatement (Second) Torts § 343 cmt. b) (emphasis and alteration in original); see also Mitchell v. Ankney, 396 N.W.2d 312, 314 (S.D. 1986) ("The duty to warn is a subpart of the duty to keep the property reasonably safe."). The duty does not, however, require the possessor to warn "when the dangerous condition is so obvious that the invitee should reasonably have been aware of it." Luther, 674 N.W.2d at 347 (internal quotation omitted).

A lesser duty applies when the plaintiff is either a licensee or a trespasser. In describing this duty, the South Dakota Supreme Court stated:

> permission or license gives leave only to take the property as the visitors find it, and that the owner or occupant undertakes no duty to those visitors who come for their own pleasure or convenience, and not at his invitation or inducement, express or implied, from a common advantage, except that, being aware of their presence, he must not injure them willfully or entrap them.

Underberg v. Cain, 348 N.W.2d 145, 146 (S.D. 1984) (internal quotation omitted); see also Musch, 460 N.W.2d at 152 (stating that this duty of care applies to both licensees and trespassers).

Relying on section 384 of the Restatement (Second) of Torts, defendants argue that they stand in the shoes of the landowner, and thus, their duty to Smithey depends on whether he was a trespasser, licensee, or an invitee. Section 384 states:

> One who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside the land by the dangerous character of the structure or other condition while the work is in his charge.

When the owner retains a general contractor to construct a building, this section applies to both the general contractor and the subcontractors retained by the general contractor. See Restatement (Second) Torts § 384 cmt. b.

The South Dakota Supreme Court has never considered whether to adopt § 384. As a result, this court must predict whether the South Dakota Supreme Court would adopt § 384. See Continental Cas. Co. v. Advance Terrazzo & Tile Co., 462 F.3d 1002, 1007 (8th Cir. 2006).

Although the South Dakota Supreme Court recognized Restatements as a non-binding, secondary authority, the South Dakota Supreme Court "frequently consults and employs the Restatements." Wildeboer v. S.D. Junior Chamber of Commerce, Inc., 561 N.W.2d 666, 673 n.10 (S.D. 1997) (Sabers, J., dissenting). Specifically in the area of premises liability, the South Dakota Supreme Court has repeatedly applied the Restatement. See, e.g., Luther, 674 N.W.2d at 347 (relying on Restatement (Second) of Torts

§§ 343 and 343A to set standard of care for invitee); Parker v. Casa Del Rey-Rapid City, Inc., 641 N.W.2d 112, 116 n.3 (S.D. 2002) (using Restatement definition of an invitee); Small v. McKennan Hosp., 437 N.W.2d 194, 199 (S.D. 1989) (relying on Restatement (Second) of Torts § 344 to describe the possessor's duty to protect an invitee from unlawful acts of third parties); Hofer v. Meyer, 295 N.W.2d 333, 335 (S.D. 1980) (adopting the attractive nuisance doctrine as defined in the Restatement (Second) of Torts § 339).

At least twenty-one other states, including several in the region, have followed the common law rule contained in § 384 and stated that a contractor working on behalf of a landowner stands in the landowner's shoes for purposes of premises liability. See DeVazier v. Whit Davis Lumber Co., 516 S.W.2d 610, 613 (Ark. 1974); Yee Chuck v. Bd. of Trustees of Leland Stanford Jr. Univ., 3 Cal. Rptr. 825, 830 (Cal. Ct. App. 1960); Mile High Fence Co. v. Radovich, 489 P.2d 308, 311 n.1 (Colo. 1971) (en banc), superseded by statute on other grounds as noted in Bath Excavating & Constr. Co. v. Willis, 847 P.2d 1141 (Colo. 1993); Duggan v. Esposito, 422 A.2d 287, 289 (Conn. 1979); Cockerham v. R.E. Vaughan, Inc., 82 So. 2d 890, 891-92 (Fla. 1955); Chronopoulos v. Gil Wyner Co., 137 N.E.2d 667, 669 (Mass. 1956); Thill v. Modern Erecting Co., 136 N.W.2d 677, 684 (Minn. 1965); Barnett ex rel. Barnett v. Equal. Sav. & Loan Ass'n, 662 S.W.2d 924, 927 (Mo. Ct. App. 1983); French v. Abercrombie, 480 P.2d 187, 192-93 (Mont. 1971); Kragel v.

Wal-Mart Stores, Inc., 537 N.W.2d 699, 707 (Iowa 1995); Von Dollen v. Stulgies, 128 N.W.2d 115, 119 (Neb. 1964); Harris v. Mentes-Williams Co., 92 A.2d 498, 499 (N.J. Super. Ct. App. Div. 1952), rev'd on other grounds by 95 A.2d 388 (N.J. 1953); Samuel E. Pentecost Constr. Co. v. O'Donnell, 39 N.E.2d 812, 817 (Ind. Ct. App. 1942); Savoie v. Littleton Constr. Co., 57 A.2d 772, 775 (N.H. 1948); Tipton v. Texaco, Inc., 712 P.2d 1351, 1358 (N.M. 1985); Broadway v. Blythe Indus., Inc., 326 S.E.2d 266, 270 (N.C. 1985); Elliott v. Rogers Constr., Inc., 479 P.2d 753, 758 (Or. 1971); Leonard v. Commonwealth, 771 A.2d 1238, 1241 (Pa. 2001); Cook v. Demetrakas, 275 A.2d 919, 923 (R.I. 1971); Rendleman v. Clarke, 909 S.W.2d 56, 60 (Tex. App. 1995); Williamson v. Allied Group, Inc., 72 P.3d 230, 233 (Wash. Ct. App. 2003).[2] Additionally, the District Court for the District of Delaware applied § 384 to a diversity case when there was no Delaware law on point. See Hollett v. Dundee, Inc., 272 F. Supp. 1, 6 (D. Del. 1967). Plaintiffs have not pointed to and the court's research has not found any case where any court explicitly refused to apply § 384. But see Simmers v. Bentley Constr. Co., 597

[2] The court notes that some of these states have subsequently limited or abandoned the common law view that the defendant's duty is determined by the plaintiff's status. See, e.g., Heins v. Webster County, 552 N.W.2d 51, 57 (Neb. 1996) (abolishing common law distinction between invitee and licensee); Ouellette v. Blanchard, 364 A.2d 631, 634 (N.H. 1976) (applying same standard of care regardless of whether plaintiff is a trespasser, licensee, or invitee). The court finds this insignificant because these states applied § 384 when they followed the common law, and South Dakota continues to apply the common law.

N.E.2d 504, 507 (Ohio 1992) (reaching decision inconsistent with § 384 without explicitly considering the issue).  Based on the foregoing, the court predicts that the South Dakota Supreme Court would follow the majority of jurisdictions and apply § 384.

Smithey argues that the South Dakota Supreme Court's decision in Musch v. H-D Electric Cooperative, 460 N.W.2d 149 (S.D. 1990), suggests that the South Dakota Supreme Court would reject the application of § 384.  In Musch, the plaintiff, who was injured when she struck a guy line wire from a power pole while riding a horse, asserted a negligence claim against the utility company.  The utility company had an easement that entitled it to place and maintain the power pole.  The utility company argued that it was not liable because plaintiff was a mere licensee.  The Supreme Court, however, held that the utility company could not avail itself of the plaintiff's licensee status.  The Supreme Court concluded that it is a "possessory interest over the land" that determines whether a non-landowner is able to assert the "trespasser defense."  Id. at 152, 153.   The Supreme Court emphasized that the utility company had no right to fence or exclude others from the land covered by its easement.

This court finds that the application of § 384 to the facts here is totally consistent with the holding in Musch.  Section 384 states that a contractor is entitled to the liabilities and immunities of the person or entity on whose

behalf the contractor is working. In this case, defendants were working on behalf of CHS, who is the landowner and who has a full possessory interest in the property. Defendants thus step in the shoes of CHS and are entitled to its liabilities and immunities. Similarly, the utility company was entitled to the liabilities and immunities of the entity for which it was acting when it placed the guy line wire. Unlike this case, however, the utility company in Musch was acting on behalf of itself, and the utility company only possessed an easement in the property. Nothing in Musch indicates that the utility company's duty would have been the same if the utility company was in fact placing the guy wire on behalf of the landowner.

Moreover, the court's holding in Musch, namely that the plaintiff's status has no effect on the utility company's duty, is consistent with another provision of the Restatement. Because the utility company did not possess the land and was not acting on behalf of the possessor, it would fall under Restatement (Second) of Torts § 386, which imposes an ordinary or reasonable standard of care. In fact, comment b to section 386 includes an illustration with facts remarkably similar to Musch, and the reporter's notes cite several of the cases relied upon by the South Dakota Supreme Court in Musch. Compare Restatement (Second) Torts § 386, with Musch, 460 N.W.2d at 152-54.

Even if Musch was irreconcilable with § 384, however, Musch would not govern defendants' duty in this case because defendants, unlike the utility company, had the power to exclude others from the construction site. From the first day of construction, the site contained a no trespassing sign. (Docket 47-8, at 2). Construction sites are often fenced off in order to exclude members of the general public. The contract between CHS and Stueve further suggests that Stueve had the power to exclude people from the construction site. Section 12.2 of the contract explicitly required Stueve to "afford the Owner and separate contractors reasonable opportunity for the introduction and storage of their materials and equipment and performance of their activities . . . ." (Docket 52-5, at 26). This provision would be unnecessary unless Stueve had the power to exclude others from the construction site. This power to exclude others is the possessory interest that the South Dakota Supreme Court found the utility company lacked in Musch.

In short, the court predicts that the South Dakota Supreme Court would apply § 384 to the facts of this case. As a result, if Smithey was either an invitee or a business visitor, then defendants had a duty to keep the property reasonably safe, including a duty to warn of dangerous, concealed conditions. See Luke, 692 N.W.2d at 169. If, however, Smithey was either an invitee or an licensee, then defendants' duty simply prohibited them from willfully injuring Smithey. See Musch, 460 N.W.2d at 152.

Defendants argue that Smithey was a trespasser, and thus, they are entitled to summary judgment because there is no evidence indicating that defendants willfully injured Smithey. The South Dakota Supreme Court described a business visitor as " 'a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.' " Parker, 641 N.W.2d at 116 n.3 (quoting Restatement (Second) of Torts § 331). The plaintiff is an invitee only if he or she does not exceed the limitations imposed on the invitation. See Jones v. E.S. Woodworth & Co., 249 N.W. 799, 801 (S.D. 1933) (stating that plaintiff was not an invitee if she exceeded the geographic scope of the invitation); see also Buzzell v. Jones, 556 A.2d 106, 108 (Vt. 1989) ("[L]imitations of time may be imposed on the invitation and if they are not complied with or are exceeded, one may not attain the status of an invitee."). The scope of the invitation and whether the plaintiff exceeded that scope are questions of fact for the jury. See E.S. Woodworth, 249 N.W. at 801; see also Pinnell v. Bates, 838 So. 2d 198, 202 (Miss. 2002).

Here, the undisputed evidence indicates that Smithey, as the general manager of Dakota Plains, met with David MacDonald of Stueve because Dakota Plains was considering building an addition to its fertilizer plant. Smithey indicated that he wanted to view the Worthing Project. MacDonald invited Smithey to come by and view the site. Defendants do not dispute that

MacDonald's invitation to view the site would make Smithey an invitee. Instead, defendants argue that Smithey exceeded the scope of the invitation by viewing the construction site after 9:30 p.m., when it was dark and all the employees had left.

The exact language of MacDonald's invitation is important. Defendants argue that MacDonald limited the invitation by explicitly requiring Smithey to make an appointment for a tour. They rely on MacDonald's deposition testimony where he stated that he invited Smithey to make an appointment to see the construction site. (Docket 47-8, at 3-4). In response, Smithey proffers an affidavit of Kurt Geisinger. Geisinger indicates that he went to the construction site the day after Smithey's accident and spoke with MacDonald. He states that MacDonald told him that he told Smithey to "come by anytime." (Docket 52-2). This evidence creates a genuine issue of material fact whether MacDonald imposed a limitation, namely making an appointment, on his invitation to Smithey.[3]

Viewing the evidence in the light most favorable to Smithey, the court must assume that MacDonald's invitation simply stated, "Come by anytime."

---

[3] Smithey argues that the court should disregard this affidavit because it contains inadmissible hearsay. The court disagrees. MacDonald's statement that he told Smithey to "come by anytime" is an admission by a party opponent, which is not hearsay. See Fed. R. Evid. 801(d)(2).

There is no express limitation on this invitation. In fact, on its face, this appears to be an unlimited invitation.

Defendants argue that, at a minimum, the invitation contained an implied limitation prohibiting Smithey from viewing the site when Stueve employees or representatives were not present. The court finds that a reasonable jury could conclude otherwise. There is nothing in the record indicating that Smithey was going to the site to meet with a representative or employee of Stueve. He had already met with the representative when he met with MacDonald. Instead, Smithey was going to the site to view the construction. This does not require the presence of Stueve personnel. As a result, the court finds that a genuine issue of material fact exists regarding whether Smithey exceeded the scope of the invitation. The jury, not the court, will decide this matter. See E.S. Woodworth, 249 N.W. at 801.

Defendants also argue that even if Smithey qualifies as an invitee, they are still entitled to summary judgment because the danger of walking on a construction site in the dark is open and obvious as a matter of law. The "known and obvious" exception states: " 'A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.' " Kartar Plaza, 488 N.W.2d at 429-30 (quoting Stenholtz v. Modica, 264 N.W.2d 514,

516-17 (S.D. 1978); see also Restatement (Second) of Torts § 343A. "' The word . . . [o]bvious means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.'" Id. (quoting Stenholtz, 264 N.W.2d at 517). Although the known and obvious exception limits a landowner's duties, whether a risk is in fact known and obvious is a question of fact for the jury. See Mitchell, 396 N.W.2d at 315 (noting issues jury would have to decide if known and obvious exception applies).

Defendants principally rely on the Alabama Supreme Court's decision in Ex parte Industrial Distribution Services Warehouse, Inc., 709 So. 2d 16, 19 (Ala. 1997), for the position that the danger inherent in Smithey's decision to walk around a dark construction site is known and obvious as a matter of law. In Ex parte Industrial Distribution Services Warehouse, Inc., the plaintiff, an invitee, was injured when he followed a fireman into a totally dark building and fell off an interior loading dock. The Alabama Supreme Court held that defendant was entitled to summary judgment: "Total darkness, possibly concealing an unseen and unknown hazard, presents an open and obvious danger to someone proceeding through unfamiliar surroundings, as a matter of law." Id. at 19; see also Hinson v. United States, 55 F. Supp. 2d 1376 (S.D. Ga. 1998) (applying Alabama law); Swonger v. Middlefield Village

Apartments, No. 2003-G-2547, 2005 WL 516528, at *3 (Ohio Ct. App. Mar. 4, 2005).

Later, in Ex parte Kraatz, 775 So. 2d 801 (Ala. 2000), the Alabama Supreme Court limited the application of Ex parte Industrial Distribution Services Warehouse, Inc. to cases involving total darkness. In Ex parte Kraatz, the plaintiff, an invitee, tripped over an unpainted speed bump after stepping off a sidewalk in a convenience store driveway. The parking lot was dim. Relying on Ex parte Industrial Distribution Services Warehouse, Inc., the defendant argued that the danger of walking across a dark parking lot was open and obvious as a matter of law. The court disagreed, stating that the plaintiff in Ex parte Kraatz was walking in dim light rather than total darkness. "Partial or poor light . . . could mislead a reasonably prudent person into thinking that he or she would be able to see and to avoid any hazards." Id. at 804. The court concluded that the numerous variables affecting whether a risk is open and obvious in low light conditions creates a question of fact that prevents summary judgment. See id. This court predicts the South Dakota Supreme Court would follow the persuasive reasoning of Alabama Supreme Court's in Ex parte Kraatz and conclude that walking in a dimly lit area is not a known and obvious danger as a matter of law.

Like the plaintiff in Ex parte Kraatz, Smithey was not walking in total darkness. Although the undisputed evidence indicates that the construction

site was dark, the testimony of David Finck indicates that the headlights from Smithey's vehicle "shined out and across the concrete" where Smithey was walking. (Docket 47-7, at 7). Finck's testimony also indicates that Smithey was walking in the area shown by the headlights when he fell. (Docket 47-7, at 7). In fact, Finck described "seeing [Smithey] fall through the light." (Docket 47-7, at 8). Although dim, the headlights provided sufficient light to create a question of fact as to whether a reasonable person would have believed that he or she could see. As a result, the danger of walking in the dark was not known and obvious as a matter of law, and defendants are not entitled to summary judgment on this issue.

In sum, a reasonable jury could find that defendants breached their duty toward Smithey. Although defendants' duty is determined by § 384, genuine issues of material fact exist on the issues of whether Smithey was an invitee and whether the danger of walking in the dark is known and obvious. As a result, defendants' motion for summary judgment is denied.[4]

---

[4] Smithey also argues that even if he is a trespasser, summary judgment is inappropriate because defendants are liable under Restatement (Second) of Torts § 337. Because the court denies the motion for summary judgment on the basis described above, the court refrains from deciding at this time whether the South Dakota Supreme Court would adopt § 337 under the facts of this case. Instead, the court will decide this issue when it instructs the jury at trial.

**B. Negligent Performance of Contractual Obligations**

Smithey also argues that defendants are liable for their negligent performance of their contractual obligations to implement safety provisions that comply with OSHA regulations. Smithey contends that defendants are liable in tort for negligent breach of these contractual obligations.

The construction contracts between CHS and Stueve impose explicit safety duties on Stueve:

> [Stueve] shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the performance of the Contract, including with respect to the property of [CHS] upon which the Project is situated and/or the Work is to be performed. [Stueve] shall take protection to prevent damage, injury or loss to:
>
> 1. employees on the Work and other persons who may be affected thereby;
>
> * * *
>
> [Stueve] shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons and property and their protection from damage, injury or loss.

(Docket 52-5, at 28-29). The subcontract between Stueve and Little Walls also addresses safety:

> To protect persons and property, [Little Walls] shall establish as [sic] safety program implementing safety measures, policies and standards conforming to (1) those required or recommended by governmental and quasigovernmental authorities having jurisdiction and (2) requirements of this agreement. [Little Walls] shall keep the jobsite clean and free from debris, resulting from

> [Little Walls's] Work, properly store equipment and material, and maintain a safe work site in collaboration with [Stueve].[5]

(Docket 52-9, at 6).

Relying on Duncan v. Pennington County Housing Authority, 283 N.W.2d 546 (S.D. 1979), Smithey argues that defendants are liable for negligently performing their contractual obligation to implement safety regulations that comply with OSHA regulations. In Duncan, the employee of a general contractor was injured when he fell while working on the construction site. The employee asserted a negligence action against the project's architect. The architect argued that it owed no duty toward the employee. The South Dakota Supreme Court disagreed. The court noted that a question of fact existed whether the architect assumed a contractual obligation to supervise the safety of the construction site. If in fact the architect assumed this obligation, the architect could be held liable in tort for negligent breach of that

[5] Little Walls argues that its written subcontract with Stueve cannot create a duty toward Smithey because the subcontract was not drafted until August of 2004, nearly nine months after the accident. This argument overlooks the fact that Little Walls was acting pursuant to an unwritten agreement with Stueve when it completed the work on the construction site. Evidence indicates that the written subcontract merely memorialized this prior, unwritten agreement. (Docket 52-5, at 18). The court thus finds that a genuine issue of material fact exists regarding whether Little Walls assumed a contractual duty to institute safety provisions that complied with OSHA regulations. See Setliff v. Akins, 616 N.W.2d 878, 888 (S.D. 2000) (stating that the terms of an implied contract are a question of fact for the jury).

obligation. In reaching this conclusion, the court noted the general legal premise:

> "Negligence which consists merely in the breach of a contract will not afford ground for an action by any one, except a party to the contract . . . . But where, in omitting to perform a contract, in whole or in part, one also omits to use ordinary care to avoid injury to third persons, who . . . would be exposed to risk by his negligence, he should be held liable to such persons for injuries which are the proximate result of such omission."

Id. at 549 (quoting Weeg v. Iowa Mut. Ins. Co., 141 N.W.2d 913, 916 (S.D. 1966)) (omissions in original).

The court in Duncan also discussed the admissibility of OSHA regulations to establish the architect's standard of care. The Supreme Court affirmed the trial court's admission of the OSHA regulations because, as component of the architect's contractual obligation to perform on-site supervision, the architect was "to obtain compliance with the contract documents." Id. at 549. Among other things, the contract documents required compliance with OSHA regulations. As a result, OSHA regulations were properly admissible to help the jury determine whether the architect negligently performed its contractual duty of on-site supervision.

Based on this authority, Smithey argues that defendants are liable in tort for negligently failing to comply with their contractual obligation to implement safety measures that comply with OSHA regulations. This court predicts, however, that the South Dakota Supreme Court would not extend

Duncan to the facts of this case. First, the defendant in Duncan was a architect, and thus, considered a professional. The South Dakota Supreme Court is more willing to impose tort liability on professionals, including architects, who negligently perform their professional duties. Cf. Mid-Western Elec., Inc. v. DeWild Grant Reckert & Assocs. Co., 500 N.W.2d 250, 254 (S.D. 1993) (recognizing professional negligence action against architect for economic loss despite lack of privity between plaintiff and architect).

Second, Duncan is distinguishable because it is a negligent supervision case. See Bartak v. Bell-Galyardt & Wells, Inc., 629 F.2d 523, 529 (8th Cir. 1980) (describing Duncan as a negligent supervision case). Smithey never argued that defendants negligently performed their contractual obligations to supervise safety on the Worthing Project. Instead, Smithey argues that Stueve's and Little Walls's contracts created contractual obligations to implement safety procedures, and that these obligations created a tort duty that inured to Smithey. The issue thus becomes whether a contractor, who assumes a contractual obligation to implement safety measures, is liable to a member of the public for negligent performance of that obligation.

This issue was discussed by the Illinois Appellate Court in Jakubowski v. Alden-Bennett Constr. Co., 763 N.E.2d 790 (Ill. App. Ct. 2002). In Jakubowski, a child was injured when he fell through a hole in the second floor of a partially constructed building. The mother, on behalf of the child,

asserted a negligence action against the general contractor. The mother argued that the contractor was liable for negligently performing its contractual duty "to initiate, maintain and supervise all safety precautions." Id. at 801. The Illinois Court of Appeals held that the contractor's duty toward the child was determined by premises liability rules rather than the contractor's obligations under the contract. The court refused to find a duty based upon the construction contract because it "might inhibit parties who enter into construction contracts from clearly spelling out their responsibility in contracts." Id.; see also Grant v. Pankoff, No. 184621, 1997 WL 33351199, at *2 (Mich. Ct. App. Apr. 11, 1997) (imposing tort liability for negligent performance of identical contractual obligation), rev'd, 577 N.W.2d 695 (Mich. 1998) (unpublished) (stating no duty is created).

The court finds Jakubowski persuasive and follows it here. Notably, the construction contract in Jakubowski used nearly identical language to that used in Stueve's contract with CHS. Additionally, the court agrees that recognizing a tort duty for negligent performance of contractual obligations may have a chilling effect. If explicitly delineating their contractual obligations for jobsite safety potentially subjects contractors to tort liability, contractors may respond by refusing to spell out their contractual obligations. This is particularly problematic in the area of safety where courts should

promote the contractual allocation of safety responsibility in a rational manner that minimizes the potential for accidents during construction.

Further, recognition that defendants' contractual duty to implement safety measures created a duty toward Smithey would, for all practical purposes, abrogate the common law as articulated in § 384 of the Restatement (Second) of Torts. As noted above, § 384 states that defendants' duty toward Smithey is determined by his status when he was on the construction site. If defendants' contractual obligations created a duty toward Smithey, however, this duty would not depend on his status. In other words, defendants would owe Smithey a duty of reasonable care even if he was a licensee or trespasser instead of an invitee.[6]

Finally, recognition of a duty in this case would likely abrogate the common law in most construction accident cases. Most construction contracts will impose explicit safety obligations on the contractor. In fact, the contractual language used in Stueve's contract with CHS is directly lifted from a common form contract in the construction industry, namely the general conditions provision promulgated by the American Institute of Architects. See

[6] If Smithey was actually an invitee in this case, then defendants' standard of care imposed by the premises liability rules is the same as the standard of care Smithey argues is created by the contractual obligations to implement safety measures—reasonable care.

2 Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner & O'Connor on Construction Law § 5:195 (2006).

In light of the effect on the common law as stated in § 384 as well as the other reasons stated, the court predicts that the South Dakota Supreme Court would not extend Duncan to the facts of this case. As a result, the court concludes that defendants' tort duty toward Smithey is governed by premises liability rules rather than defendants' contractual obligations to implement safety measures.

**II. Contributory Negligence and Assumption of the Risk**

Defendants argue that Smithey's assumption of the risk and contributory negligence bar recovery on the negligence claim as a matter of law. Specifically, defendants contend that Smithey assumed the risk of injury by walking on a construction site in the dark. Defendants also contend that Smithey's contributory negligence was more than slight as a matter of law.

As a preliminary matter, the court notes that "'[q]uestions of negligence, contributory negligence and assumption of the risk are for the jury in all but the rarest of cases so long as there is evidence to support the issues.'" Rowland, 658 N.W.2d at 80 (quoting Pettry v. Rapid City Area Sch. Dist., 630 N.W.2d 705, 708 (S.D. 2001)) (alteration in original).

To establish assumption of the risk, a defendant must prove that the plaintiff: "(1) had actual or constructive knowledge of the risk; (2) had an

appreciation of its character; and (3) voluntarily accepted the risk, having had the time, knowledge, and experience to make an intelligent choice." Pettry v. Rapid City Area Sch. Dist., 630 N.W.2d 705, 708 (S.D. 2001). Assumption of the risk is an affirmative defense that bars recovery on a negligence claim. Rantapaa v. Black Hills Chair Lift Co., 633 N.W.2d 196, 204 (S.D. 2001). "Generally, both knowledge and appreciation of danger are jury questions." Ray v. Downes, 576 N.W.2d 896, 898 (S.D. 1998). The court can only decide these issues if " 'it is clear that any person in [plaintiff's] position must have understood the danger . . . .' " Id. (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 68, at 481 (5th ed. 1984)) (alteration in original).

"Contributory negligence is a 'breach of a duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause.' " Johnson v. Armfield, 672 N.W.2d 478, 481 (S.D. 2002) (quoting Boomsma v. Dakota, Minn. & E. R.R., 651 N.W.2d 238, 245-56 (S.D. 2003)). The plaintiff's contributory negligence bars recovery if more than slight in comparison to the negligence of the defendant. See SDCL 20-9-2. According to the statute, "the plaintiff's negligence is compared with the negligence of the defendant, not with 'the ordinary prudent person.' " Schmidt v. Royer, 574 N.W.2d 618, 627 (S.D. 1998) (quoting Wood v. City of Crooks, 559 N.W.2d 558, 560 (S.D.

1997)). The court can only hold that contributory negligence bars plaintiff's recovery as a matter of law if "the facts show beyond any dispute that plaintiff has committed negligence more than 'slight.'" Westover v. East River Elec. Power Coop., Inc., 488 N.W.2d 892, 896 (S.D. 1992).

The court finds that summary judgment on the issues of assumption of the risk and contributory negligence is inappropriate. Defendants argue that Smithey assumed the risk and was more than slightly contributorily negligent by walking on the construction site in the dark. As noted above, however, evidence indicates that Smithey was walking in the light provided from the headlights of his vehicle when he fell. This creates a genuine issue of material fact regarding whether Smithey was walking in the dark, or whether he could in fact see where he was walking.

Viewing the evidence in the light most favorable to Smithey, the court finds that a reasonable jury could find that Smithey did not assume the risk of falling in the hole. Specifically, defendants fail to establish the first and second elements of assumption of risk as a matter of law. A reasonable jury could find that Smithey did not know or appreciate the danger of falling in a non-barricaded hole while walking on a semi-lit construction site. Cf. Parker, 641 N.W.2d at 117 (stating that question of fact existed whether plaintiff appreciated the risk of falling despite seeing snow and grease on loading dock).

Nor can the court conclude as a matter of law that Smithey's negligence was more than slight when compared to defendants. Viewing the evidence in light most favorable to Smithey, defendants failed to provide reasonable warnings, including barricades and lighting, around a dangerous hole, failed to follow their own policy regarding barricading holes, and failed to properly inspect the construction project for safety. The jury will have to decide how Smithey's alleged contributory negligence compares to defendants' alleged negligence. See Westover, 488 N.W.2d at 900 (holding trial court properly refused to find that plaintiff's contributory negligence was more than slight as a matter of law when the defendant failed to follow its own safety procedures and failed to provide supervision and warnings to protect the plaintiff). The court thus denies defendants' motion for summary judgment based upon assumption of the risk and contributory negligence.

Based on the foregoing, it is hereby

ORDERED that Little Walls's motion (Docket 44) for summary judgment is denied.

IT IS FURTHER ORDERED that Stueve's motion (Docket 49) for joinder is granted, but the motion for summary judgment is denied.

Dated January 18, 2007.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE